**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272
Email: *mreese@reesellp.com*

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Maia Kats
1220 L Street, NW - Suite 300
Washington, DC  20005
Telephone: (202) 777-8381
Email:  *mkats@cspinet.org*

**MEHRI & SKALET, PLLC**
Craig L. Briskin
1250 Connecticut Avenue, NW – Suite 300
Washington, D.C. 20036
Telephone: (202) 822-5100
Facsimile:  (202) 822-4997
Email:  *cbriskin@findjustice.com*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jeffrey Worth and Robert Burns, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br>    v.<br><br>CVS Pharmacy, Inc.,<br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Jeffrey Worth and Robert Burns ("Plaintiffs"), on behalf of themselves and others similarly situated (the "Classes"), bring this Class Action Complaint against CVS Pharmacy, Inc. ("Defendant" or "CVS"), and on the basis of personal knowledge, information and belief, and investigation of counsel, allege as follows:

## INTRODUCTION

1.      Plaintiffs brings this proposed class action seeking damages and injunctive relief from Defendant CVS for its unlawful, unfair, and deceptive practices in the marketing and sale of Algal-900 DHA (the "Product" or "Algal-900 DHA").  CVS sells the Product on its website and in its thousands of retail stores nationwide.

2.      CVS manufactures and sells Algal-900 DHA as a dietary supplement, promoting it—including in bolded letters on its primary display panel and packaging—as "clinically shown to improve memory," and as the "only DHA form with clinical proof of efficacy, capable of reducing errors "50% or more" in an "episodic memory test."

3.      CVS's claims about Algal-900 DHA are false and misleading.  Comprehensive, high-quality clinical studies have shown that omega-3 fatty acids, including DHA, work no better than a placebo in tests of adults' cognitive performance.  In a 2014 report published in a top peer-reviewed clinical nutrition journal, researchers conducted an extensive meta-analysis of 34 randomized, controlled trials of omega-3 fatty acids, involving 12,999 subjects, and concluded that omega-3 fatty acids "do not improve cognitive performance in children, adults, or the elderly."

4.     Likewise, a five-year NIH study of older adults, published in 2015, found that omega-3 fatty acid supplements "[do] not have a statistically significant effect on cognitive function." The agency states that "substantive conclusions about the value of [omega-3 fatty acids] cannot be drawn."

5.     The sole study on which CVS relies for its claim that Algal-900 DHA improves memory is a limited, short-term study conducted by in-house scientists of Martek, a dietary supplements manufacturer. The Federal Trade Commission has concluded that this study does not support claims that DHA improves memory, and has prohibited Martek from making memory claims based on this study. Still, CVS relies *exclusively* on this study for its claims that Algal-900 DHA improves memory.

6.     Plaintiffs Jeffrey Worth and Robert Burns purchased CVS's Algal-900 DHA, and found that it did not perform as advertised. They would not have purchased the Product had they known that it has no clinically proven effect on memory and cognitive performance in adults.

7.     Plaintiffs seek an order enjoining CVS from continuing its false and misleading marketing practices with regard to Algal-900 DHA, and providing Plaintiffs and the proposed Classes of purchasers (as defined below) with all compensation available under the law.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The total amount in controversy exceeds $5,000,000, exclusive of interests and costs, the number of members of the proposed Classes is 100 or more, and at least one member of each Class is a citizen of a state different from the defendant.

9.     Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events and misrepresentations giving rise to the claims occurred in this District, Plaintiff Worth resides in this District, and purchased CVS's Algal-900 DHA in this District.

## PARTIES

10.     Plaintiff Jeffrey Worth is a resident of Nassau County, New York.  During the Class Period (defined below), Plaintiff purchased Algal-900 DHA for personal use from a CVS retail location in Nassau County, New York.

11.     Plaintiff Robert Burns is a resident of Citrus County, Florida.  During the Class Period (defined below), Plaintiff Burns purchased Algal-900 DHA for personal use, from a CVS retail location in Citrus County, Florida.

12.     Defendant CVS Pharmacy, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One CVS Drive, Woonsocket, Rhode Island.  CVS is a public company engaged in the retail sale of prescription drugs, supplements, and general merchandise.  It has about 7,775 retail locations in the United States.  CVS also sells products online at www.cvs.com.

13.     Defendant, directly and through its agents, sells Algal-900 DHA throughout the United States, including in the states of New York and Florida.  Defendant is the registered marketer, retailer, and distributor of Algal-900 DHA, and created and disseminated the false and misleading labels for the Product.

## FACTUAL BACKGROUND

### I.      Omega-3 Fatty Acids

14.     Omega-3 fatty acids are long-chain, polyunsaturated fatty acids (PUFA).  There are three main omega-3 fatty acids: alpha-linolenic acid (ALA), eicosapentaenoic acid (EPA), and docosahexaenoic acid (DHA).

15.     Omega-3 fatty acids are found in substantial amounts in many foods, including fish, vegetables, vegetable oils, and nuts.

### II.     CVS's Algal-900 DHA Labeling

16.     CVS aggressively markets and sells Algal-900 DHA as a treatment for memory improvement and brain health.  On the front and back of the package, CVS claims that Algal-900 DHA offers "CLINICALLY SHOWN MEMORY IMPROVEMENT."  Also on the front of the package is the bolded claim that Algal-900 DHA is "[t]he only DHA form & dosage clinically shown to improve memory[.]"






17.     CVS repeats this message on the back of the label and adds more specific

statements:

**CVS/pharmacy Algal-900\* DHA is an algae-sourced omega-3, and is clinically shown to improve memory and support eye and heart health\***

6

**\* In a clinical study of healthy subjects 55 years and older, after 6 months of daily supplementation with 900mg of algal DHA in an episodic memory test:**

- Errors were reduced 50% more in the algal DHA group than in the placebo group.

- When contrasted against expected performance levels, the algal DHA's group memory improved like it was 7 years younger versus the placebo group which improved by 3.6 years.

18.     Charts and tables on the back of the package imply that the Product is an essential supplement for proper brain functioning, and superior to other omega-3 products, stating that "DHA represents 97% of omega-3 fatty acids in the human brain!"

**III.     CVS's Claims About Algal-900 DHA Are False and Misleading**

19.     CVS's Algal-900 DHA claims are false and misleading because they rely on a small, limited study that has been discredited.  An overwhelming body of research finds no clinical effect of DHA on memory.  CVS's claims also violate federal disclaimer regulations, rendering the Product misbranded, and false and misleading.

A.     The FTC Has Concluded that the One Study Relied on by CVS for Its Algal-900 DHA Claims Does Not Support Such Claims

20.     The sole study on which CVS relies in support of its Algal-900 DHA claims is titled "Beneficial effects of docosahexaenoic acid on cognition in age-related cognitive decline," by Karin Yurko-Mauro et al., also known as the "MIDAS Study."[1]  This study purports to show that DHA supplements improves learning and memory function in subjects with age-related cognitive decline.

---

[1] The full citation for the article is: Karin Yurko-Mauro, Beneficial Effects of Docosahexaenoic Acid on Cognition in Age-Related Cognitive Decline, 6 *Alzheimer's & Dementia* 456 (2010).

21.     The Federal Trade Commission (FTC), however, has already concluded that the MIDAS study does "not reveal any improvement in working memory" and that "clinical-proof claims [based on the study] are false and misleading."[2]

22.     The FTC also noted that the study's principal investigator and author was an employee of Martek Biosciences Corporation ("Martek"), which funded the study for the purpose of promoting its own DHA product, "BrainStrong Adult."

23.     The FTC entered a consent decree with Martek, banning it from basing memory claims on the MIDAS study.  In announcing the action, the FTC stated:

> Results [from test subjects performing episodic memory tasks] . . . did not yield a pattern of statistically and clinically significant improvement in the DHA group relative to the placebo group. Whether analyzed separately or as a composite, the effect size of any statistically significant, between-group difference was trivial, and no evidence showed that any such difference correlated with improvement in everyday episodic memory tasks outside the laboratory, such as the ability to remember the location of one's sunglasses or why one entered a room.[3]

24.     In the subsequent consent decree and accompanying FTC order, the FTC enjoined Martek and its partner company, i-Health, from making any memory improvement and cognitive decline claims, absent "competent and reliable scientific evidence" that held up "in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true."[4]

---

[2] FTC, *Statement of Chairwoman Edith Ramirez and Commissioner Julie Brill: In the Matter of i-Health, Inc. and Martek Biosciences Corp.* (June 6, 2014), *available at* https://goo.gl/BdKT70 (viewed Jan. 29, 2016).

[3] Complaint at 7–8, i-Health, Inc. & Martek Biosciences Corp., No. C-4486 (F.T.C. 2014), *available at* https://goo.gl/MHQSbW (viewed Jan. 29, 2016).

[4] *i-Health, Inc. & Martek Biosciences Corp.*, No. C-4486 (F.T.C. Aug 21, 2014), *available at* https://goo.gl/ERTkEP (viewed Jan. 29, 2016).

25.     The FTC also enjoined Martek and i-Health from misrepresenting the results of the MIDAS study, including through the use of the phases "clinically shown" or "clinically proven."

26.     Martek quickly took "BrainStrong Adult" off the market after entry of the Consent Decree.  Martek no longer promotes any DHA products as improving memory in adults.

27.     Despite these findings, CVS makes the same false and misleading claims about the cognitive health benefits of taking its DHA supplement, and relies on the very same MIDAS study that the FTC has unequivocally rejected as a basis for such claims.

> B.  Clinical Studies Comprehensively Reject CVS's Claims About Algal-900 DHA

28.     Rigorous clinical testing and research refute CVS's Algal-900 DHA claims.  The American Journal of Clinical Nutrition, a top peer-reviewed medical journal in the field of clinical nutrition, published a 2014 meta-analysis of 34 studies involving 12,999 participants, and concluded that consuming omega-3 fatty acids does not "promote cognitive function in terms of composite memory, executive function, and processing speed domains" and does not "improve[] … cognitive performance in terms of recognition, immediate and delayed word recall, digit span backward and forward tests, rapid visual information processing, verbal fluency, and simple and choice reaction times."[5]

29.     In 2015, the National Institutes of Health (NIH) published results from the "AREDS2" study, and concluded that omega-3 fatty acids do not affect adults' cognitive

---

[5] Jiangjiang Jiao et al., *Effect of n-3 PUFA Supplementation on Cognitive Function Throughout the Life Span from Infancy to Old Age: A Systematic Review and Meta-Analysis of Randomized Controlled Trials*, 102 Am. J. Clinical Nutrition 1422 (Dec. 2014), http://goo.gl/ISghfV (viewed Jan. 29, 2016).

functioning and memory.[6]  This followed a 2005 literature review commissioned by NIH and a division of the U.S. Department of Health and Human Services, titled "Effects of Omega-3 Fatty Acids on Cognitive Function with Aging, Dementia, and Neurological Diseases."  It found only one study assessing the role of omega-3 fatty acids in maintaining cognitive function in normal aging.  It concluded that omega-3 fatty acid consumption showed no association with reduced risk of cognitive impairment or decline.[7]

30.     Plaintiffs and the other Class members have been and will continue to be deceived by CVS's false and deceptive advertising claims about Algal-900 DHA's cognitive health benefits and memory improvement.

### C.   The Algal-900 DHA Label Violates Federal Disclaimer Regulations

31.     FDA regulations require manufacturers such as CVS to include a mandatory disclaimer statement on the label .  21 C.F.R. § 101.93 (the "disclaimer requirement").  The mandatory disclaimer statement must appear "on *each* panel or page" where there is a claim.  *Id.* § 101.93(d).

32.     The purpose of the disclaimer requirement is to clearly indicate to consumers that a dietary supplement "is not intended to diagnose, treat, cure, or prevent any disease."  *Id.* § 101.93(c).

33.     CVS makes claims on both the front and back of its Algal-900 DHA label, which means the disclaimer must appear both on the front and back of the label.  It appears only on the back of the label in small and obscured print.

---

[6] Emily Y. Chew et al., *Effect of Omega-3 Fatty Acids, Lutein/Zeaxanthin, or Other Nutrient Supplementation on Cognitive Function*, 314 JAMA 791 (Aug. 25, 2015), http://goo.gl/ySGXDB (viewed Jan. 29, 2016).

[7] NIH, *Omega-3 Fatty Acids and Health: Fact Sheet for Health Professionals*, https://goo.gl/5dUJHr (last updated Oct. 28, 2005).

## ECONOMIC INJURY

34.     When purchasing Algal-900 DHA, Plaintiffs sought a product that would improve memory.

35.     Plaintiffs believed CVS's claims that Algal-900 DHA is clinically shown to improve memory and would improve memory.

36.     Plaintiffs believed that the Product was lawfully branded.

37.     Plaintiffs would not have purchased Algal-900 DHA had they known that CVS's claims were false and misleading, or constituted misbranding.

38.     For these reasons, Algal-900 DHA was worth less than what Plaintiffs paid for it.

39.     Plaintiffs lost money as a result of CVS's deception, because they did not receive that for which they paid.

40.     Plaintiffs altered their position to their detriment, and suffered damages in an amount equal to the amount they paid for Algal-900 DHA.

41.     By engaging in its misleading, deceptive, and unlawful marketing, CVS reaped and continues to reap increased sales and profits.

42.     CVS knew, or should have known, that its claims about the clinical efficacy of Algal-900 DHA, and its failure to comply with FDA disclaimer requirements, would mislead consumers.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff Worth brings this action on behalf of himself and the members of the following New York Class (the "New York Class"):

     a.     **New York Class**: All persons residing in the State of New York who have purchased Algal-900 DHA for their own use or the use of a family member, and not for resale, since February 1, 2010.  Excluded from the New York Class are: governmental entities; Defendant; any entity in

which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

44.     Plaintiff Robert Burns brings this action on behalf of himself and the members of the following Florida Class (the "Florida Class"):

     a.     **Florida Class**: All persons residing in the State of Florida who have purchased Algal-900 DHA for their own use or the use of a family member, and not for resale, since February 1, 2012.  Excluded from the Florida Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

45.     Plaintiffs Worth and Burns bring this action on behalf of themselves and the members of the following Nationwide Class:

     a.     **Nationwide Class**: All persons residing in the United States who have purchased Algal-900 DHA for their own use or the use of a family member, and not for resale, since February 1, 2012.  Excluded from the Nationwide Class are the following: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

46.     This action is maintainable as a class action under Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

47.     **Numerosity.**  The Classes consist of many thousands of persons in both New York and Florida, and the nation as a whole.  The Classes are so numerous that joinder of all

members is impracticable.  Disposition of their claims in a class action will benefit the parties and the Court.

48. **Commonality and Predominance.**  The questions of law and fact common to the Classes have the capacity to generate common answers that will drive resolution of this action. They predominate over any questions affecting only individual members of the Classes. Common questions of law and fact include, but are not limited to, the following:

a. Whether Defendant has marketed and advertised Algal-900 DHA as a drug, without the required FDA approval;

b. Whether Defendant marketed and advertised Algal-900 DHA without the disclaimer required by the FDA, rendering the Product misbranded;

c. Whether Defendant's conduct is a deceptive act or practice within the meaning of New York General Business Law section 349;

d. Whether Defendant's conduct is false advertising within the meaning of New York General Business Law section 350;

e. Whether Defendant's conduct is a deceptive act or practice within the meaning of Florida Deceptive and Unfair Trade Practices Act section 501;

f. Whether Defendant's conduct constitutes negligent misrepresentation of the Product;

g. Whether Defendant's conduct constitutes fraud;

h. Whether Plaintiffs and the Classes are entitled to injunctive relief; and

i. Whether Plaintiffs and the Classes have sustained damages with respect to the claims asserted, and if so, the proper measure of those damages.

49.     **Typicality.**  Plaintiffs' claims are typical of the claims of the Classes because they purchased CVS's Algal-900 DHA, which had false "clinically shown" and efficacy claims on a standard label.  The claims of Plaintiffs and the Classes are based on the same legal theories and arise from the same false, misleading, and unlawful conduct.

50.     **Adequacy.**  Plaintiffs are adequate representative of the Classes because their interests do not conflict with the interests of other members of the Classes.  Each Class member is entitled to damages reflecting a similar and discrete purchase or purchases that each Class member made.  Plaintiffs have retained competent and experienced class action counsel who intend to vigorously prosecute this action.  The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

51.     **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all Class members is impracticable.  The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-prohibitive.  Additionally, adjudication of this controversy as a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims asserted herein.  Plaintiffs anticipate no difficulty in the management of this action as a class action.

52.     **Injunctive Class.**  This Court should certify the Classes under Rule 23(b)(2), because CVS has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

53.     **Notice to the Classes.**  Plaintiffs anticipate that this Court can direct notice to the Classes, to be effectuated by publication in major media outlets and the Internet.

**COUNT I**
**(ON BEHALF OF THE NEW YORK CLASS)**
**Violation of New York General Business Law Section 349**

68.     Plaintiff Worth incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

69.     Plaintiff brings this claim pursuant to New York General Business Law Section 349 ("GBL 349") on behalf of himself and members of the New York Class.

70.     GBL 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."

71.     As fully alleged above, by advertising, marketing, distributing, and/or selling Algal-900 DHA with the deceptive claims detailed above, and without the requisite disclaimer, to Plaintiff and the other New York Class members, Defendant engaged in, and continues to engage in, deceptive acts and practices.

72.     In accordance with Subsection (h) of GBL 349, Plaintiff seeks an order enjoining CVS from continuing these unlawful deceptive acts and practices.  Absent such an order, CVS will continue to falsely and misleadingly advertise the clinical efficacy and lawfulness of Algal-900 DHA, and in doing so, irreparably harm the New York Class.

73.     As a consequence of CVS's deceptive acts and practices, Plaintiff and other New York Class members were injured in fact and suffered an ascertainable loss of monies since the Product they received was worth less than they paid.  As such, in accordance with subsection (h) of GBL 349, Plaintiff and the New York Class seek actual and punitive damages.

**COUNT II**
**(ON BEHALF OF THE NEW YORK CLASS)**
**Violation of New York General Business Law Section 350**

74.     Plaintiff Worth incorporates by reference the allegations of the preceding

paragraphs as if fully set forth herein.

75.     Plaintiff brings this claim pursuant to New York General Business Law Section 350 ("GBL 350") on behalf of himself and the New York Class.

76.     GBL 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

77.     New York General Business Law Section 350-a ("GBL 350-a") defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."  GBL 350-a also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in light of such representations with respect to the commodity … to which the advertising relates."

78.     As alleged above, by advertising, marketing, distributing, and/or selling Algal-900 DHA with the deceptive claims detailed above, and without the requisite disclaimer, to Plaintiff and the New York Class, Defendant has engaged in, and continues to engage in, false advertising, and thus has violated, and continues to violate, GBL 350.

79.     Plaintiff seeks an order enjoining CVS from continuing this false advertising and misbranding.  Absent an order enjoining these activities, CVS will continue to mislead the New York Class as to the clinical efficacy and lawfulness of Algal-900 DHA, and in doing so, will irreparably harm each of the New York Class members.

80.     As a direct and proximate result of CVS's violation of GBL 350, Plaintiff and the New York Class have also suffered a loss of monies, because the Product they received was worth less than they paid.  Plaintiff and the New York Class seek actual damages and punitive damages.

## COUNT III
### (ON BEHALF OF THE FLORIDA CLASS)
### Violation of the Florida Deceptive and Unfair Trade Practices Act

81.     Plaintiff Burns incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

82.     Plaintiff brings this claim pursuant to Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.2101 ("FDUTPA").

83.     The FDUTPA provides that unfair methods of competition, unconscionable acts and practices, and unfair or deceptive acts or practices in the conduct "of any trade or commerce" are unlawful.  Fla. Stat. § 501.204.  The FDUTPA defines "trade or commerce" to include any advertisement or solicitation relating to any "thing of value."  Fla. Stat. § 501.203(8).

84.     Plaintiff Burns and the Florida Class members are "consumers" under the FDUTPA, Fla. Stat. §§ 501.201-501.213.

85.     The practices employed by Defendant, whereby Defendant unfairly advertised, promoted, and marketed the clinical efficacy of its Algal-900 DHA Product, are unfair, deceptive, and misleading.  In addition, the practice employed by Defendant, whereby Defendant sold, promoted and marketed Algal-900 DHA constitutes a per se violation of FDUTPA under Section 501.203(3)(c), because the Product is misbranded.  Fla. Stat. § 500.04(1), (2).

86.     As a result of CVS's deceptive and unfair trade acts, Plaintiff Burns and the Florida Class suffered monetary losses associated with the purchase of the Product, which did not deliver its promised benefits, and was worth less than Plaintiffs paid for it.

87.     Plaintiff Burns, on behalf of himself and the Florida Class, respectfully demands an award against CVS for actual and/or compensatory damages, in addition to the costs of this proceeding and attorney's fees, as provided by Fla. Stat. § 501.2105, and such other relief as this Court deems just and proper.

**COUNT IV**
**(ON BEHALF OF THE NATIONWIDE CLASS)**
**Fraudulent Misrepresentation**

88.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as if fully set forth herein.

89.     Defendant made false representations of a material fact to Plaintiffs and the Class as alleged above.

90.     The Defendants knew that the prominent representations on the Algal-900 DHA packaging representing that the product is clinically shown to improve memory was false, or the representation was made with such reckless disregard for the truth that the knowledge of the falsity of the statement can be imputed to Defendant.

91.     Defendant made the false representations for the purpose of inducing Plaintiffs and the Class to purchase the product.

92.     Plaintiffs and the Class relied with justification on Defendant's misrepresentations.

93.     Plaintiffs and the Class suffered damages as a direct result of reliance on the misrepresentations.

**COUNT V**
**(ON BEHALF OF THE NATIONWIDE CLASS)**
**Negligent Misrepresentation**

94.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as if fully set forth herein.

95.     CVS had a duty to accurately disclose the quality and characteristics of its Product to Plaintiffs and the Class.

96.     Defendant's misrepresentations and omissions were material and concerned the specific characteristics and quality of its Product that a reasonable consumer would consider in

purchasing it.

97.     CVS made false and misleading statements and omissions on its Product labeling and website with the intention of inducing Plaintiffs and the Class to purchase Algal-900 DHA.

98.     CVS knows and has known, or by the exercise of reasonable care should have known, that its statements regarding the efficacy of Algal-900 DHA are and always have been false and misleading.

99.     Had Plaintiffs and the Class known the truth about CVS's Product, they would not have purchased it.

100.    As a direct and proximate result of CVS's misrepresentations and omissions of material fact, Plaintiffs and the Class have suffered and will continue to suffer damages and losses as alleged herein, in an amount to be determined at trial.

## COUNT VI
### (ON BEHALF OF THE NATIONWIDE CLASS)
**Unjust Enrichment**

101.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as if fully set forth herein.

102.    Plaintiffs and members of the Nationwide Class purchased Algal-900 DHA from CVS, conferring an economic benefit on CVS.

103.    Defendant has been unjustly enriched by its sale of the Products through the use of false, misleading and deceptive marketing and advertising that Algal-900 DHA will treat memory problems, and that it is clinically shown to improve memory.

104.    It would be unfair and inequitable for Defendant to retain the income it has received at the expense of Plaintiffs and the Nationwide Class.

105.    Therefore, Plaintiffs are entitled to an order disgorging the income from the sale of  Algal-900 DHA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Classes herein, prays for judgment and relief on all of their legal claims as follows:

A.      An order certifying that the action may be maintained as a class action;

B.      An order enjoining Defendant from pursuing the policies, acts and practices complained of herein;

C.      An order requiring Defendant to pay restitution to Plaintiffs and all members of the Classes;

D.      An order disgorging Defendant's income from the sale of Algal-900 DHA;

E.      An order requiring Defendant to pay actual damages to Plaintiffs and all members of the Classes;

F.      Punitive damages;

G.      Pre-judgment interest from the date of filing this suit;

H.      Reasonable attorneys' fees;

I.      Costs of this suit; and

J.      Such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated:  February 1, 2016

**REESE LLP**

*/s/ Michael R. Reese*

Michael R. Reese

100 West 93rd Street, 16th Floor

New York, New York 10025

Telephone: (212) 643-0500

Facsimile:  (212) 253-4272

Email: *mreese@reesellp.com*

**CENTER FOR SCIENCE
IN THE PUBLIC INTEREST**

Maia Kats

1220 L Street, NW - Suite 300

Washington, DC  20005

Telephone: (202) 777-8381

Email:  *mkats@cspinet.org*

**MEHRI & SKALET, PLLC**

Craig L. Briskin

1250 Connecticut Avenue, NW – Suite 300

Washington, D.C. 20036

Telephone: (202) 822-5100

Facsimile:  (202) 822-4997

Email:  *cbriskin@findjustice.com*

*Counsel for Plaintiffs
and the Proposed Class*