

Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

June 20, 2016

**By ECF**

The Honorable Marilyn D. Go
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    ***Aliano v. CVS Pharmacy, Inc.***, Case No. 16-cv-02624-FB-MDG (E.D.N.Y.)
       ***Worth, et al.  v. CVS Pharmacy, Inc.***, Case No. 16-cv-00498-FB-MDG (E.D.N.Y.)

Dear Judge Go:

We write on behalf of Defendant CVS Pharmacy, Inc. ("CVS") to address certain questions the Court or counsel raised during the conference held on June 7, 2016, in the above-referenced actions concerning notice, class compensation and injunctive relief in the *Aliano* class action settlement.

I.        **The Notice Plan Is Adequate.**

The target class to receive notice of the settlement consists of all consumers in the United States who purchased CVS Algal-900 DHA containing, on the label and/or on the packaging, claims that it was "clinically shown to improve memory" or offers "clinically shown memory improvement" (hereafter the "Product"), between November 15, 2008 and the date of preliminary approval. (Stipulation of Settlement, *Aliano* Dkt. No. 11-2, ¶¶ 2.4, 2.39, 2.40.)  CVS sold approximately 367,688 units of the 90-count bottle and 326,401 units of the 30-count bottle of Algal-900 DHA, for a total of 694,089 units of the Product.  The class of purchasers of the Product numbers approximately 197,000.[1]

Development of the Notice Plan.

The notice plan was developed by the parties in consultation with recognized experts in the field of legal notification, Gina M. Intrepido-Bowden and Carla A. Peak.[2]  Market research concerning purchasers of dietary supplements specifically for memory improvement was not available.

---

[1] The estimated class size is based on CVS customer data showing that the average purchase was 3.55 units of the Product.

[2] Ms. Intrepido-Bowden and Ms. Peak are officers of Kurtzmann Carson Consultants, LLC ("KCC"), an experienced national class action service provider and the parties' proposed class action administrator for the *Aliano* settlement.

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia.  "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante  Amsterdam  Baltimore  Beijing  Brussels  Caracas  Colorado Springs  Denver  Dubai  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  Johannesburg  London  Los Angeles  Luxembourg  Madrid  Mexico City  Miami  Milan  Minneapolis  Monterrey  Moscow  Munich  New York  Northern Virginia  Paris  Perth  Philadelphia  Rio de Janeiro  Rome  San Francisco  São Paulo  Shanghai  Silicon Valley  Singapore  Sydney  Tokyo  Ulaanbaatar  Warsaw  Washington DC  Associated offices: Budapest  Jeddah  Riyadh  Zagreb.  For more information see www.hoganlovells.com

(Declaration of Gina Intrepido-Bowden on Settlement Notice Plan, April 29, 2016, ECF No. 12 ("Intrepido-Bowden Decl.") ¶ 16.)  However, there exists extensive market research data concerning U.S. adults who use Omega 3/Fish Oil vitamin and dietary supplements, and the characteristics of this target group were studied as best representing the class for purposes of media selection.  (*Id.* ¶¶ 16-17.[3])

<u>Reach of the Notice Plan.</u>

As set forth in the Stipulation of Settlement, Section 6.6, the notice plan contains three components: (a) direct notice, (b) publication notice, and (c) website notice.

(a)      Direct Notice.

Direct notice will be sent to everyone identified through CVS customer records as having purchased the Product and for whom CVS has an e-mail or postal address on file.  The e-mail notice will contain a hyper-text link to the Settlement Website.

Based upon its review of data provided by CVS concerning customers who purchased the Product either using an ExtraCare card or on-line through cvs.com, KCC estimated that there are approximately 152,000 class members for whom valid e-mail or postal address information exists. (Intrepido-Bowden Decl. Ex. 1 at 9.)  This figure already *excludes* 45,184 purchasers for whom CVS's contact information appeared invalid or incomplete.  Thus, KCC estimated there are 126,466 e-mail addresses for class members.  (Intrepido-Bowden Decl. ¶ 19; *id.* Ex. 1 at 14.)  KCC also assumed, based on its extensive class action notice experience, that 20% of the e-mails sent would "bounce-back" as undeliverable.[4]  After factoring in the 20% bounce-back rate, KCC estimated it would provide actual, valid e-mail notice to 101,173 class members, representing 51.31% of the class.

Also based on its review of CVS customer data, KCC estimated there are 47,786 postal addresses for class members.  If an e-mail notice is returned as undeliverable, a post-card notice will be sent to the last known physical/postal address for the Class Member.  If CVS only has a physical/postal address but no e-mail address for the Class Member, then CVS will mail the post-card notice in the first instance.[5]  Based on experience, KCC assumed that 10% of the postal notices

---

[3] For example, compared with the general adult population, Omega 3/Fish Oil supplement consumers are 61% more likely to be 65 years or age or older.  (Intrepido-Bowden Decl ¶18.)

[4] This 20% bounce-back rate is an estimate based on KCC's experience.  In reality, CVS expects a much lower bounce-back rate for the e-mails that will ultimately be sent based on the data it maintains.  For example, from the time period from June 1, 2015 through May 31, 2016, for ExtraCare members, CVS had a bounce-back rate of the e-mails it sent of less than 0.80%.  For CVS.com subscribers – individuals who have registered on CVS.com and chose to receive promotional emails from CVS.com – the bounce-back rate was less than .50%.  In addition, CVS maintains the accuracy of its e-mail data by automatically suppressing any e-mails that "hard bounce" once (that is, e-mails that are returned as undeliverable due to an erroneous or nonexistent e-mail address) or "soft bounce" more than twice (that is, e-mails that are rejected by an existing, accurate e-mail account for some reason, such as the mailbox's being full).

[5] Prior to mailing, addresses will be checked against the National Change of Address (NCOA) database maintained by the U.S. Postal Service.  The accuracy of postal addresses will also be verified through the Post Service Coding Accuracy Support System (CASS) and Delivery Point Validation (DPV) system.  Any mail returned undeliverable will be re-mailed to any address available through Postal Service information; for example when mail is returned because automatic forwarding had expired but the new address is

would be returned as undeliverable mail.  After factoring in the undeliverable mail, KCC estimated it would provide actual, valid postal notice to 43,008 class members, representing 21.81% of the class. Accordingly, direct e-mail or postal notice is expected to reach at least 73.1% of the class. (Intrepido-Bowden Decl. ¶¶ 4, 23; *id.* Ex. 1 at 14.)

        (b)     Publication Notice.

Publication notice will consist of publication of the Short-form notice once in *People* magazine; twice in *USA Today*; as well as 30 days of Internet banner notifications.  The Internet banner notifications will contain links to the Settlement Website.  There will be 10 million unique Internet impressions over a one-month period.  This will enhance the effectiveness of notice, as market research indicates 85.2% of likely class members have access to the Internet.  (Intrepido-Bowden Decl. ¶ 27.)

        (c)     Settlement Website.

The Settlement Website will provide access to the Long-form Notice, Settlement Agreement, and Claim Form, with the ability of a Class Member to submit a claim on-line.

The reach of the Notice Plan is consistent with other effective court-approved plans and clearly complies with the requirements of due process.  The Federal Judicial Center's ("FJC") *Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide* considers 70%–95% reach among class members to be a "high percentage" and reasonable.  (Intrepido-Bowden Decl. ¶ 5.)

*AARP The Magazine* Is Not a Viable Alternative.

CVS has considered alternative publication in *AARP The Magazine*.  The AARP publication, however, is significantly more expensive than either *People* or *USA Today*.  The cost of publishing notice in *AARP The Magazine* would be $212,049—compared with $14,476 for *USA Today* and $75,014 for *People*.  More importantly, publication in *AARP The Magazine*, instead of in *People* and *USA Today*, would have only a negligible impact on the already excellent reach of the existing Notice Plan: KCC estimates reach would only increase from 79.1% to 79.7% of class members. Furthermore, choosing *AARP The Magazine* would delay the publication of notice.  The magazine is only published every other month, and the next available issue is the October/November issue, which would not be distributed to readers until the time period from October 2 to November 24, 2016.  CVS has also never advertised the Algal-900 DHA Products in *AARP The Magazine.*

    **II.**    **The Settlement Provides Adequate Compensation.**

The proposed CVS settlement is even more favorable to class members than the *Jovel* settlement for which the Court has already granted preliminary approval.  As explained above, CVS has e-mail or postal address information for a large percentage of the purchasers of the Product. Consequently, CVS is able to provide notice to approximately 79% of the class, and CVS customer data will be used to verify claims and determine eligibility for refunds.  CVS will provide a refund in the full amount of the purchase to any claimant who has proof of purchase or a credit in the full

---

known to the Postal Service.  (Intrepido-Bowden Decl. ¶¶ 20-22; *id.* Ex. 1 at 14.)  In addition, KCC will perform an address search – or a "skip trace" – on returned mail in an attempt to obtain a secondary postal address for the Class Member, using LexisNexis's people-finding tool, Accurint.

Hon. Marilyn D. Go                              - 4 -                              June 20, 2016

amount of the purchase to any claimant whose purchase can be verified with company records. Further, even a claimant for whom a purchase is not documented will be entitled to a recovery of $4.00 cash or a $6.50 voucher, representing a significant percentage of the retail purchase price for Algal-900 DHA.

As discussed during the conference before the Court on June 7, 2016, the *Aliano* parties are in the process of revising the notice, claim form, and associated settlement documents to clarify the compensation terms, and expect to submit an amended motion for preliminary approval shortly.

### III.      The Settlement Provides Adequate Injunctive Relief.

CVS created new labels for Algal-900 DHA, and by December 2015, CVS had ceased receiving bottles with the old labels.  The new labels do not use the statements "clinically shown to improve memory" or "clinically shown memory improvement."  As the existing Settlement Agreement shows, CVS has agreed, for prospective relief, that any new Algal-900 DHA shall use the new labels, and that CVS will not make the challenged claims in the future unless any representations regarding the health benefits, performance, safety or efficacy of Algal-900 DHA are supported by competent and reliable scientific evidence.

As the Court suggested, the parties will revise the injunctive relief of the Stipulation of Settlement in Section 3.3 to remove an unintentional ambiguity that may exist regarding the scope of injunctive relief as follows:

> In a process that culminated in December 2015, before the filing of this Action, CVS created new labels for the Algal-900 DHA Product and ceased receiving product with the old labels claiming that the Product was "clinically shown to improve memory" or offered "clinically shown memory improvement" (the "Challenged Claims").  CVS agrees not to make the Challenged Claims or any other representations regarding the health benefits, performance, safety, or efficacy of the Algal-900 DHA Product or any other dietary supplement, food or drug containing docosahexanoic acid ("DHA")—excluding (1) infant formula or ingredients when sold specifically for use in infant formula, and (2) prenatal dietary supplements or prenatal vitamins—on any product label, packaging, advertising or marketing material of any kind, unless such representations are supported by Competent and Reliable Scientific Evidence [as defined in the agreement] that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence.  For the avoidance of doubt, the statement on the new Algal-900 DHA Product label that the Product provides "pure DHA memory support" does not violate this agreement.

The new label on Algal-900 DHA appears as follows:

Hon. Marilyn D. Go                          - 5 -                          June 20, 2016



30-count package.



90-count package.

None of the plaintiffs in either the *Aliano* or *Worth* actions alleges he purchased Algal-900 DHA with the new label.  And there are no allegations in either complaint regarding the new label.  Thus, the new label is not at issue in this litigation.  In any case, the statement "pure DHA memory support" is not a claim of memory improvement.  Rather, it relates to the well-recognized connection between DHA and brain health.  Therefore, the new label contains a "structure/function" claim of the type made on numerous products containing DHA and is permitted by the FDA.  *See* 21 C.F.R. 101.93(f) (explaining that permitted structure/function statements on dietary supplement labels as those that "describe the role of a nutrient or dietary ingredient intended to affect the structure or function in humans or that characterize the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function").

* * *

We look forward to discussing these issues further at the next telephone conference on June 21, 2016, at 9:15 a.m.

Hon. Marilyn D. Go                                  - 6 -                                  June 20, 2016

Respectfully submitted,

/s/     Frank T. Spano
        Frank T. Spano

frank.spano@hoganlovells.com
D +1 212 918 3522

cc: All counsel, by ECF